UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

ARROW LIGHTER, INC.,

Plaintiff,

-against-

NORTH AMERICAN CAPACITY INSURANCE COMPANY,

Defendant.

---------------------------------------------------------- x

MEMORANDUM & ORDER

19-CV-1828 (ENV) (PK)

VITALIANO, D.J.

Arrow Lighter, Inc. ("Arrow") brought an insurance coverage action against North American Capacity Insurance ("NAC"), seeking, *inter alia*, a declaratory judgment regarding NAC's duties and obligations arising from two lawsuits brought by non-party BIC Corporation ("BIC") against Arrow and others. *See* Am. Compl., Dkt. 38.[1] NAC answered the complaint and asserted three counterclaims against Arrow. Countercls., Dkt. 39. In its third counterclaim, NAC seeks a declaratory judgment that it is entitled to obtain reimbursement from Arrow for its share of certain settlement proceeds paid to BIC. Countercls. ¶¶ 88–92.

Arrow has now moved to dismiss NAC's third counterclaim pursuant to Rule 12(b)(6), alleging NAC cannot obtain recoupment because NAC had a duty to defend Arrow in the relevant action. Arrow Mot., Dkt. 94-1. Because Arrow filed its motion after it answered NAC's counterclaims, Arrow's motion is construed as a motion for judgment on the pleadings under Rule 12(c). Arrow Answer, Dkt. 40; *see also Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (explaining that a motion to dismiss for failure to state a claim "that is styled

---

[1] All citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination.

as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c).").

On December 22, 2025, Magistrate Judge Peggy Kuo issued a report and recommendation (the "R&R") recommending that Arrow's motion be denied in full. R&R, Dkt. 95. Arrow timely filed objections to the R&R. Objs., Dkt. 96. NAC filed a reply in opposition to Arrow's objections. NAC Reply, Dkt. 102. For the reasons set forth below, the Court overrules Arrow's objections and adopts the R&R in its entirety as the opinion of the Court.

<u>Background</u>[2]

Arrow, a wholesaler of pocket lighters, purchased a commercial general liability policy ("Policy") from NAC for the period of August 1, 2014 through August 1, 2016. Countercls. ¶ 7. The Policy covers, among other things, damages claimed to have resulted from "personal and advertising injury," including "[t]he use of another's advertising idea in [Arrow's] 'advertisement'; or . . . [i]nfringing upon another's copyright, trade dress or slogan in [Arrow's] 'advertisement.'" *Id.* ¶ 10–11. Under the Policy, NAC has a "duty to defend" Arrow against any suit seeking such damages. *Id.* The Policy contains exclusions for "Knowing Violation of Rights of Another," "Material Published With Knowledge of Falsity," "Material Published Prior to Policy Period," and "Infringement of Copyright, Patent, Trademark Or Trade Secret." *Id.* ¶ 17.

A litigation war erupted in December 2018, when BIC filed in this district a broadside action entitled *BIC Corp. v. Arrow Lighter, Inc. et al.*, No. 18-CV-6922 (the "Civil Action") against Arrow and other market competitors, including non-party Excel Wholesale Distributors

[2] Facts are taken from NAC's counterclaims and the documents attached to it or incorporated in it by reference, which are accepted as true for the purposes of this motion, and all reasonable inferences are drawn in favor of NAC as the non-moving party. *See Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012); *AFP Mfg. Corp. v. AFP Imaging Corp.*, No. 17-cv-3292, 2018 WL 3329859, at *1 (S.D.N.Y. July 6, 2018).

Inc. ("Excel"), and soon after opened a second front by filing *In re Certain Pocket Lighters*, No. 337-TA-1142 before the International Trade Commission (the "ITC Action"), also against Arrow and Excel, among others. Countercls. ¶¶ 20, 75. BIC alleged, among other things, that Arrow imported, advertised, and sold pocket lighters that infringed upon BIC's trade dress. *Id.* ¶ 29. As the litigations progressed, Arrow's defense counsel entered an appearance for Excel in both actions. *Id.* ¶ 76. It is undisputed that the Policy does not extend insured status to Excel. *Id.* ¶¶ 12, 78.

Arrow tendered the BIC Actions to NAC for defense and indemnification on January 7, 2019. *Id.* ¶ 19. While NAC's evaluation was still underway, Arrow filed this action against NAC. *Id.* ¶ 24. This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. *See* Am. Compl., ¶¶ 3–4. On May 29, 2019, NAC denied coverage for the BIC Actions, partially because BIC's complaint only identified allegedly infringing products introduced outside of the Policy Period. Countercls. ¶¶ 25–26; *see also* Ex. 2 to Countercls., Dkt. 39–2, at 11–12. However, in reviewing the exhibits to Arrow's motion for partial summary judgment, NAC learned for the first time that certain of the products referenced in BIC complaints were allegedly sold and advertised during the Policy Period. Countercls. ¶¶ 34–38. NAC informed Arrow that it was willing to reconsider its denial of coverage for the Civil Action if Arrow could provide support for its contention that BIC's trade dress infringement claim encompassed products sold during its Policy Period. *Id.* On June 21, 2019, NAC received a copy of Arrow's third supplemental interrogatory response from BIC, containing a list of allegedly infringing products sold and distributed by Arrow, some of which took place during the Policy Period. *Id.* NAC agreed to cover defense expenses for the Civil Action for the period after June 21, 2019. *Id.*

During a two-day long mediation in September 2019, NAC and Arrow discussed the extent

to which NAC was obligated to fund any settlement in the Civil Action. *Id.* ¶¶ 57–58. Both parties agreed to fund a specified portion of the combined settlement payment made to BIC to resolve the Civil Action, while preserving their respective rights to contest indemnity coverage for the settlement payment. *Id.* ¶ 59. In an agreement dated October 1, 2019, NAC and Arrow each agreed to "retain the right to seek an adjudication of their right to obtain reimbursement for their portion of the settlement payment made to BIC from one another." Ex. 7 to Countercls., Dkt. 39–7; *see also* Countercls. ¶ 60. Later that month, Arrow, BIC, and Excel entered into a written agreement settling the BIC Actions. Countercls. ¶ 62. NAC and Arrow paid their respective portions of the combined settlement payment to BIC, and BIC dismissed its claims against Arrow and Excel. *Id.* ¶ 64. Given that it was not a party to the Policy, NAC did not fund any of Excel's settlement payments or defense costs, nor, on the other side of the coin, was NAC apprised of any contribution made by Excel to the settlement of the Civil Action. *Id.* ¶¶ 78–79.

In March 2020, the parties requested that discovery regarding the settlement and defense expenses be stayed until the Court resolved Arrow's anticipated motion for partial summary judgment. Dkt. 41. After this request was granted, the parties cross-moved for partial summary judgment on the limited issues of (1) whether NAC was obligated to provide defense coverage to Arrow for the ITC Action and (2) the effective start date of NAC's defense obligation concerning the Civil Action. Mar. 13, 2020 Order. On March 1, 2024, the Court granted Arrow's motion for partial summary judgment, finding that NAC had a duty to defend Arrow in the Civil Action, which arose on January 7, 2019. *Arrow Lighter, Inc. v. N. Am. Capacity Ins. Co.*, No. 19-CV-1828, 2024 WL 553718 (E.D.N.Y. Jan. 2, 2024), *R&R adopted* (Mar. 1, 2024). The Court also granted NAC's cross-motion for partial summary judgment, finding that NAC did not have a duty to defend Arrow in the ITC Action. *Id.* Shortly following the summary judgment ruling, and

before discovery resumed, Arrow filed its motion to dismiss NAC's third counterclaim on July 3, 2024.

Legal Standard

To survive a motion for judgment on the pleadings, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (cleaned up). The standard for granting a motion for judgment on the pleadings "is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Id.* The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *Id.*

When reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In the absence of any objections, the district court need only be satisfied that there is no clear error on the face of the record. *See Dafeng Hengwei Textile Co. v. Aceco Indus. & Com. Corp.*, 54 F. Supp. 3d 279, 283 (E.D.N.Y. 2014). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195, 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

Where an objection has been made to any of the magistrate judge's findings or recommendations, the district court judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A proper objection is timely and specific. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359–61 (2d Cir. 2025). Although an objection may "repeat arguments that were previously raised," objections that are "nonspecific or merely perfunctory responses" are improper and reviewed only for clear error. *Id.* at 361 (quoting *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022))

(internal quotation marks omitted). In addition, objections "generally may not raise new arguments not previously made before the magistrate judge." *Id.* at 359.

Discussion

Although hard to parse, Arrow seems to raise five objections to the R&R: (1) California law should govern; (2) recoupment is only available if no duty to defend existed, which it did here; (3) the "conducted against liability" theory should apply; (4) discovery is improper in light of the settlement; and (5) discovery is not warranted given NAC has not plausibly alleged the applicability of the Policy Exclusions. *See generally* Objs. Some of these objections are reviewed *de novo*, and others for clear error.

It is surely debatable as to whether Arrow's choice-of-law objection presents a valid objection under Rule 72. Arrow now contends that the R&R improperly applied New York law when it should have applied California law, and then went on to misconstrue New York law to create a conflict with California law, for which Magistrate Judge Kuo provided no explanation. Objs. at 9–10. Stated in this fashion, the objection appears to raise not only an additional objection but also new arguments, that is, a matter never presented to the Magistrate Judge for her consideration. *Nambiar*, 158 F.4th at 359 (2d Cir. 2025). But there is no need to tarry here to settle the debate. It is far more efficient to assume that the objection has been validly stated and to consider it *de novo*, for it has no substantive merit.

When sitting in diversity, federal courts must apply the forum state's choice-of-law rules. *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005). In New York, the first step is to determine whether an "actual conflict" of law exists. *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223. 613 N.E.2d 936, 937 (1993). An actual conflict between the laws of two jurisdictions exists "where the applicable law from each jurisdiction provides different substantive rules." *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citing *Curley v. AMR*

*Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). The difference in law must be "relevant" and pose a "significant *possible* effect on the outcome of the trial." *Fin One Pub Co.*, 414 F.3d at 331. If no actual conflict has been established, "New York will dispense with a choice of law analysis." *Curley*, 153 F.3d at 12.

In a sleight of hand, to support the assertion that there is an actual conflict between relevant law in California and New York, Arrow relies upon NAC's opposition to Arrow's motion for judgment on the pleadings, which Arrow argues "reveal[s] that there was a disagreement as to California law's application to this case." Objs. at 9. However, Arrow, as the proponent of non-New York law, bears the burden of demonstrating an actual conflict between New York and California law. And, as noted, if the party advocating a choice of law analysis does not demonstrate the claimed actual conflict, the inquiry ends there. *See Park Place Ent. Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002).[3]

Arrow's second objection to the R&R is that recoupment is impossible as a matter of law because it "requires proof of no duty to defend," and a duty to defend in the Civil Action was found by this Court in its summary judgment decision. Obj. at 9, 14. On *de novo* review, this objection is overruled.

Since the difference is important, it must be clearly understood that NAC does not seek recoupment of its defense costs; NAC seeks reimbursement for the amount it paid in settlement,

---

[3] Arrow repeatedly argued that California law would apply only "if" a conflict existed between New York and California law. *See, e.g.*, Arrow Mem. at 8, 13, 18, 19. In certain places, Arrow even seems to argue that there is no conflict at all between New York and California law. *See, e.g.*, Objs. at 14. Nowhere does Arrow establish that New York and California law provide different substantive rules, which were relevant and posed a significant possible effect on the outcome of the case. *See IBM*, 363 F.3d at 143. That puts an end to Arrow's conflict of laws allegations and to all the permutations of a choice-of-law argument.

which it contends was not encompassed in its duty to indemnify. *See generally* Countercls. On summary judgment, the Court found that NAC had a duty to defend Arrow in the Civil Action, and NAC did not have a duty to defend Arrow in the ITC Action—the duty of indemnification, distinct from the duty to defend, was not before the Court at that time. *See Arrow Lighter*, 2024 WL 553718. "New York courts have long distinguished the duty to indemnify from the duty to defend." *Liberty Ins. Corp. v. Hudson Excess Ins. Co.*, 147 F.4th 249, 258 (2d Cir. 2025). Whereas the duty to defend requires an insurer to "provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage," *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1131 (N.Y. 2007), the duty to indemnify is "determined by the actual basis for the insured's liability to a third person" and "requires a covered loss" be established. *Servidone Const. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 425, 477 N.E.2d 441, 445 (1985). The duty to defend "does not entail an obligation to pay the settlement amount in the absence of a duty to indemnify." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013). An insurer's obligation to pay a settlement payment for a covered loss flows from the duty to indemnify, not the duty to defend; NAC's duty to defend Arrow in the Civil Action does not preclude NAC from seeking reimbursement of the amount it paid to settle the action if that amount was not covered by its duty to indemnify. *See id.*

Arrow's third objection to the R&R is that the "conducted against liability" doctrine should apply. Objs. at 14. Arrow argues that even if the Policy did not impose on NAC a duty to defend the ITC Action, NAC was still required to do so, either because the defense of the ITC Action was "conducted against the liability" at issue in the Civil Action or because the claims in both actions were "inextricably intertwined." *See* Objs. 14–19. The "conducted against liability" theory was rejected as unsupported by New York law in this Court's March 1, 2024 Order adopting Magistrate

Judge Kuo's report and recommendation on the motions for summary judgment, which no party objected to. Dkt. 86. Arrow's objection now is also improper for an equally important reason: Arrow did not advance the "conducted against liability" theory in its motion for judgment on the pleadings. *See Nambiar*, 158 F.4th at 359. Reviewed for clear error, this objection is overruled. Arrow may not revisit this Court's summary judgment ruling under the guise of an objection to the present R&R.

Turning to Arrow's fourth objection, Arrow appears to object to the R&R on the basis that further discovery would "force[] an insured to litigate the very issues it elected to resolve via settlement in order to prove actual liability for covered claims." Objs. at 21. On *de novo* review, this objection is overruled. Arrow's objection runs afoul of the well-settled principle that permits parties "a right to discovery to attempt to ascertain facts necessary to prove [their] claim." *Maltezos v. Marine Terrace Apartments*, No. 87-CIV-7347, 1990 WL 52112, at *3 (S.D.N.Y. Apr. 13, 1990). Discovery here concerns whether the settlement resolved a covered loss, that is, the applicability of the Policy Exclusions and whether any portion of the settlement payment to BIC represents amounts paid to discharge Excel's liability in the Civil Action. R&R at 12–13. Contrary to Arrow's assertion, it does not involve the "liability" for any underlying trade dress infringement. Objs. at 21.

In the same vein, and in its fifth and final objection, Arrow objects to further discovery on the basis that NAC has not plausibly established the applicability of the Policy Exclusions, so discovery is not warranted. Objs. at 22. On *de novo* review, this objection is overruled. To survive a motion for judgment on the pleadings, NAC need only "state a claim to relief that is plausible on its face." *Lively*, 6 F.4th at 201 (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). NAC plausibly alleges the applicability of the Policy Exclusions by alleging that the "Knowing

Violation of Rights of Another" and "Material Published Prior to Policy Period" exclusions eliminate or restrict indemnity coverage for BIC's claims against Arrow in the Civil Action. Countercls. ¶ 91.

To the extent Arrow makes additional objections not addressed above, any such objections are so "nonspecific" that they do not constitute proper objections under Rule 72, and are, along with the rest of Judge Kuo's R&R, subject to clear error review. *Nambiar*, 158 F.4th at 361. Applying that standard, *see Dafeng*, 54 F. Supp. 3d at 283, the Court has undertaken a careful review of the remainder of the R&R, which recommends the denial of Arrow's motion for judgment on the pleadings, and has found it to be correct, well-reasoned, and free of any clear error. The Court, therefore, adopts it as the opinion of the Court.

## Conclusion

For the reasons stated above, the Court adopts Magistrate Judge Kuo's R&R in its entirety as the opinion of the Court.

The parties are referred to Magistrate Judge Kuo for the continued pretrial management of this case.

So Ordered.

Dated: Brooklyn, New York
November 11, 2026

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge